KYTE *v.* MacIVOR.

1. GARNISHMENT—PLEDGES—DISCLOSURE—SERVICE OF WRIT.
   Pledged shares of stock held by garnishee are subject to garnishment where held at time of service of writ, that being the time intended by statute as for which disclosure is made (3 Comp. Laws 1929, §§ 14858, 14863, 14864).

2. SAME—SALE OF PLEDGED STOCK BY GARNISHEE—GOOD FAITH.
   Finding of trial court that sale by garnishee of pledged shares of stock after service of writ of garnishment was not in good faith is supported by evidence.

3. SAME—INADEQUATE SALE PRICE OF PLEDGED STOCK.
   Garnishee, pledgee with power of sale, is accountable to plaintiff for difference between undoubted value and inadequate price for which shares of stock pledged were sold after service of writ of garnishment (3 Comp. Laws 1929, §§ 14858, 14863, 14864).

Appeal from Wayne; Webster (Arthur), J. Submitted January 12, 1934. (Docket No. 25, Calendar No. 37,456.) Decided March 6, 1934.

Garnishment proceedings by Edyth DeMuth Kyte against J. A. MacIvor, principal defendant, and First National Bank—Detroit, garnishee defendant. Judgment for plaintiff. Garnishee defendant appeals. Affirmed.

*Lula E. Bachman,* for plaintiff.

*Leslie L. Alexander* and *Howell S. White,* for garnishee defendant.

WIEST, J. This is an appeal by the garnishee defendant from a judgment against it upon trial of the statutory issue.

The garnishee defendant held the note of the principal defendant, secured by collateral pledge of 1,212 shares of stock of the J. A. MacIvor Lumber Company, with power of sale without notice. After service of the writ of garnishment the note fell due and the bank sold the shares of stock at private sale to J. A. MacIvor Lumber Company for the amount due it from the principal defendant, and made disclosure to such effect. Plaintiff demanded trial of the statutory issue, and upon trial before the court, it was determined that the stock, while unlisted, was worth at least twice the amount for which it was sold and the sale was not made in good faith. The court also held that, from the time of service of the writ, the bank was bound to hold the property, subject to its lien, and make disclosure thereof, and what was done was a subterfuge, and the bank should have obtained for the stock $37,000, instead of $21,000, the amount of its claim, and, as the amount of the judgment against the principal defendant and pledgor of the stock was $12,534, gave judgment against the garnishee for that amount. The writ of garnishment was issued after judgment against the principal defendant and was served August 13, 1932. On August 15, 1932, the bank notified the principal defendant that his deposits in the bank "recently held out of your account subject to a writ of garnishment, instituted by Edyth DeMuth Kyte, were this day, applied on your direct note dated May 18, 1932, for $21,268.33, due August 18, 1932, held at our Peoples Wayne office. We are also holding your collateral subject to this writ as well as our own prior claim."

The note held by the bank fell due on the 18th day of August, 1932. August 25, 1932, the bank sent the principal defendant notice as follows:

"This is to advise you that pursuant to our rights, as pledges of 1,212 shares of the common stock of the

J. A. MacIvor Lumber Company, held by us as security to your note of May 18, 1932, due August 18, 1932, in the amount of $21,000, with interest at the rate of six per cent., we shall offer for sale on Friday, August 26, 1932, at 12 o'clock noon, at the office of the Detroit Bankers Company, 825 First National Bank Building, Detroit, Michigan, and shall sell and dispose of so much of said stock and collateral as may be necessary to pay the undersigned the indebtedness as aforesaid, its interest and cost of such sale."

Two hours before the time fixed for the sale a special meeting of the board of directors of the J. A. MacIvor Lumber Company was held, with three directors present, and "Mr. MacIvor (principal defendant) explained to the meeting that the 1,212 shares of capital stock of this corporation owned by him would be offered for sale by the First National Bank to satisfy the claim of that bank on defaulted paper of Mr. MacIvor amounting to approximately $21,300 at 12 o'clock noon on August 26th, the date of this meeting, and that the stock would likely be acquired either by the bank or outside debtors, as he was not in a position to protect himself against the sale. It was the consensus of opinion that it would be in the best interests of the corporation to purchase the said shares for the corporation's own account, providing no higher bids therefor were made than an amount sufficient to satisfy the bank's claim. Thereupon, on motion of L. S. Trowbridge, supported by F. C. Burden and unanimously adopted, the officers of the corporation were instructed to cause a bid to be made at the full amount claimed by the First Wayne National Bank and to purchase and pay for the shares for this corporation if same can be acquired at such price."

No notice of sale was given plaintiff. The sale was held and the J. A. MacIvor Lumber Company, of which defendant MacIvor was principal stockholder and president, purchased the shares of stock for the exact sum due upon defendant MacIvor's note.

The next day the garnishee made disclosure of no indebtedness to the principal defendant and set up the holding of the note and pledged shares of stock, and sale thereof in accord with terms of the contract of pledge, to the J. A. MacIvor Lumber Company and, therefore, did not have any property, money, goods, chattels, credits or effects belonging to the principal defendant in its possession or under its custody or control.

In behalf of the garnishee defendant it is contended that plaintiff could not, by service of the writ of garnishment, change, alter or affect existing contractual rights between the pledgee and the principal defendant and, inasmuch as the note was due and the pledged shares of stock were sold, in accord with contract right, before the time of disclosure, the statute, 3 Comp. Laws 1929, §§ 14863, 14864, has no application. The statute provides:

"SECTION 14863. If upon the disclosure, or the trial of the statutory issue hereinafter provided for, it shall appear that the garnishee had in his possession at the time of the service of the process upon him, or thereafter, any promissory note, bill of exchange, order, receipt, bond, or other written promise for the payment of money, or the delivery of property belonging to the principal defendant, the garnishee shall deliver the same to the commissioner or other person appointed by the judge or commissioner as a receiver, if by him or the courts so ordered; and it shall be his duty, under the direction of the court to collect and apply the proceeds upon

any execution in favor of the plaintiff and against the garnishee, and to pay him the surplus, if any.

"SECTION 14864. If it shall appear, as aforesaid, that the garnishee had in his possession, as aforesaid, any personal property of the principal defendant, and that the same is subject to any pledge, lien or mortgage, and at the time of the disclosure has not been sold by the garnishee, the same shall be delivered by the garnishee to the commissioner or receiver, if the commissioner or judge so ordered, to be by him disposed of under the direction of the court, if a greater amount than the incumbrance can be obtained therefor, and after paying the amount of such incumbrance to apply the balance as aforesaid, or the plaintiff may be allowed by like order to pay or tender the amount due the garnishee."

Plaintiff and the bank had the same debtor. The debtor pledged shares of stock to secure his debt to the bank. Until sale the general ownership and legal title remained in the pledgor, with right of possession in the pledgee. The writ found such an existing state of title, pledge and possession. The mentioned statute was enacted to obviate the common-law rule and to afford remedy by garnishment.

Stress is placed upon that part of the statute reading "and at the time of the disclosure has not been sold by the garnishee," and, inasmuch as the sale was made after service of the writ and before disclosure, we are asked to hold the statute inapplicable. This would be too narrow a construction and ignore another statute (3 Comp. Laws 1929, § 14858), which provides that the test is from the time of service of the writ. The shares of stock, so pledged and in the possession of the pledgee, were subject to garnishment. *Old Second National Bank of Bay City* v. *Williams*, 112 Mich. 564. Being so subjected by the mentioned statute that statute pro-

vided adequate protection of the rights of the pledgor, pledgee and plaintiff.

The mentioned statute does not admit of what was done in this instance. The disclosure is as of the time of service of the writ and such is the clear intention of the mentioned statute. The bank rejected the protection so afforded by statute and sold the pledged shares of stock and now seeks a test arising out of its own acts after service of the writ and insists that, unless there was fraud, connivance or collusion in the sale, plaintiff's writ fails.

The circuit judge found that the garnishee did not act in good faith in selling the stock but in an attempt to protect the principal defendant. The evidence supports such finding. We place decision, however, upon failure of the bank to obey the mentioned statute.

Upon service of the writ the bank was warned that the pledged shares were in a sense, from that time, *in custodia legis,* and disclosure should have been of the fact as of that time, and had such been done the statute would have been complied with and the full rights of the bank and plaintiff adequately protected.

The evidence shows that the stock was worth at least $31 per share, and was sold for $17 and a few cents per share. The difference between the undoubted value and the sale price would more than satisfy plaintiff's judgment and such surplus, established by the proofs, the garnishee defendant stands accountable for and the judgment is affirmed, with costs to plaintiff.

NELSON SHARPE, C. J., and POTTER, NORTH, BUTZEL, and EDWARD M. SHARPE, JJ., concurred. FEAD and BUSHNELL, JJ., did not sit.