[No. 31003. Department One. May 23, 1950.]

EDWARD L. EYRE & COMPANY, *Respondent,* v. V. T. HIRSCH *et al., Defendants,* THE FIRST NATIONAL BANK OF WAITSBURG *et al., Appellants.*[1]

[1]Reported in 218 P. (2d) 888.

*Herbert Ringhoffer,* for appellants.

*Evans, McLaren, Lane, Powell & Beeks,* for respondent.

BEALS, J.—During and prior to the year 1946, V. T. Hirsch was engaged in business in Walla Walla county, under the trade name of Hirsch Feed and Grain Company. He also operated a feed mill, which burned May 12, 1946.

In June, 1946, Edward L. Eyre and Company, a corporation, instituted this action against Mr. and Mrs. Hirsch, seeking recovery against the defendants for money due in the amount of $18,414.76, plus interest and costs.

June 14, 1946, the plaintiff caused a writ of garnishment to issue, directed to three corporations, namely, Firemen's Fund Insurance Company, Sun Insurance Office, Limited, a corporation (which had issued insurance covering some property belonging to Hirsch that had been destroyed by fire), and the First National Bank of Waitsburg (which held promissory notes drawn by Hirsch in favor of the bank, and also held collateral as security for the payment of these notes).

On its own motion, Lawrence Warehouse Company, a corporation, was made a party to this proceeding as an additional garnishee, by order filed June 25, 1948, and filed its answer to the writ early in July.

The garnishee Firemen's Fund Insurance Company admitted an indebtedness to Hirsch, upon an insurance policy which it had issued, in the sum of $4,665.95, and paid that amount into the registry of the court to await the final dis-

position of the action. Prior to the trial, by stipulation of the parties, this sum was applied as a partial payment upon plaintiff's claim against Hirsch.

We shall refer to the plaintiff as Eyre, to the defendants Hirsch as Hirsch, to the garnishee First National Bank of Waitsburg as the bank, to the garnishee Lawrence Warehouse Company as Lawrence, and to the garnishee Sun Insurance Office, Limited, as Sun.

By its answer to the writ, verified July 2, 1946, the bank alleged that, at the time of service of the writ, it was indebted to Hirsch in the sum of $127.18 upon a checking account; that it had in its possession warehouse receipts belonging to Hirsch, five of which were issued by Lawrence covering 404,477 pounds of barley and 75,480 pounds of wheat, another warehouse receipt issued by Fullerton for 50,040 pounds of wheat, and a warehouse receipt issued by Columbia County Grain Growers for 28,636 pounds of wheat, stating that the above warehouse receipts were held by the bank as collateral security for loans made to Hirsch, the loans being evidenced by promissory notes drawn by Hirsch in favor of the bank, in the aggregate amount of $14,890, together with interest at six per cent.

The answer further alleged that the bank held title certificates to a Dodge truck and an Oldsmobile coupe belonging to Hirsch; that the truck had been destroyed by fire, the bank maintaining a claim for the proceeds of an insurance policy thereon; that the bank also held, as collateral security, an assignment by Hirsch of a contract for the sale of real estate between Hirsch, as vendor, and one Weber, as vendee, covering a tract of land in Walla Walla county, the bank also holding an unrecorded deed to the premises, conveying title to the land from Hirsch to the bank, and that there was then due, on the contract of sale of the land, a balance on the purchase price in the sum of eleven hundred dollars. The bank also alleged that it held, as further collateral, a claim on an insurance policy issued to Hirsch covering "stock."

The bank further alleged that Hirsch owned none of the bank's capital stock; that all of the items belonging to Hirsch, above referred to, were held by the bank subject to a valid

pledge thereof by Hirsch to the bank, and that all claims of plaintiff Eyre, under the writ, were inferior to the claims of the bank under the several pledges to the bank executed by Hirsch.

The bank prayed that it be discharged as garnishee, and allowed an attorney's fee.

It should here be stated that, November 19, 1946, pursuant to authority from Hirsch, the bank sold the grain represented by the warehouse receipts issued by Fullerton and Columbia County Grain Growers, respectively, receiving therefor the sum of $2,143.90, which the bank credited upon the notes theretofore signed in its favor by Hirsch.

On the trial, the evidence disclosed that, January 27, 1947, Lawrence issued a warehouse receipt in lieu of the other warehouse receipts held by the bank, the new receipt replacing the five receipts which the bank previously held.

It appeared that Hirsch had instituted, in the United States district court, an action against Sun on a fire insurance policy which the latter had issued covering a mill and grain belonging to Hirsch which had been destroyed by fire; that the action had been prosecuted to judgment, and, thereafter, had been settled by stipulation between the parties; that $11,100 of the amount for which Sun was held liable had been paid into the registry of the United States district court, and that this amount had been transmitted by the clerk of that court to the clerk of the superior court for Walla Walla county, to be held in the registry of that court subject to the judgment to be rendered in this action.

Pursuant to stipulation of the parties in the case at bar, by order dated June 18, 1948, the action pending against Sun, by way of the writ of garnishment above referred to, was dismissed, and any lien which had been acquired by Eyre under the writ was transferred to the fund in the registry of the court.

By letter dated March 29, 1947, Lawrence informed the bank that it would pay the bank $8,012.98 then due on the notes issued by Hirsch, the bank to pay Lawrence $1,521.12 on account of storage charges against the grain, and to assign all claims against Hirsch to Lawrence.

The grain represented by the receipts issued by Lawrence was stored in a building known as the Loundagin Barn, which was owned by Hirsch and by him leased to Lawrence, which maintained and operated the building as a bonded warehouse, employing one Henley as its general agent. Apparently, Henley was also employed by Hirsch in some capacity. It seems to be undisputed that a considerable amount of the grain represented by the receipts issued by Lawrence had disappeared from the warehouse. Lawrence claimed that Hirsch had ordered Henley to move the grain to the feed mill, but whether this was done is uncertain. In any event, the shortage was reported to Lawrence July 9, 1946, the amount thereof being somewhat indefinite.

The grain that should have been in the warehouse was represented by warehouse receipt No. W-01208-A issued by Lawrence, which called for 404,477 pounds of barley and 75,480 pounds of wheat. It appears that, of the grain called for by this receipt, there was in the warehouse, April 4, 1947, 69,080 pounds of barley and 62,570 pounds of wheat, as, on the date last mentioned, the bank sold, on the market, these amounts of grain for $3,672.85, and applied this sum on Hirsch's notes. The grain was sold at $53.50 per ton for the barley, and $1.75 per bushel for the wheat. At the foregoing prices, the total value of the remaining grain called for by the warehouse receipt issued by Lawrence, would have been something over nine thousand dollars.

November 1, 1947, the bank assigned to Lawrence, in consideration of payment of the face value, all promissory notes issued by Hirsch then held by the bank, representing an indebtedness of Hirsch in the sum of $8,012.98 (the original indebtedness having been reduced to this amount by liquidation of various properties held as security by the bank). The assignment to Lawrence carried with it all collateral held as security for the notes, including warehouse receipts and any claim on insurance policies, reserving to the bank, however, a claim on the fire insurance policies as security for the sum of $651.66, which the bank had allowed Hirsch to withdraw on an overdraft for the purpose of financing his action against

Sun. A statement was issued by the bank December 19, 1947, showing that Hirsch was then indebted to the bank in this amount, and had been so indebted since July 21, 1947.

April 1, 1948, the bank rendered an accounting, as garnishee herein, showing that the indebtedness of Hirsch on his notes had been reduced from the original amount of $14,890 to $8,012.98.

By its answer, Lawrence alleged that, November 1, 1947, the garnishee First National Bank had sold and assigned to it certain promissory notes signed by Hirsch, together with all security and collateral held by the bank in connection therewith; that the promissory notes were past due, and that the defendants Hirsch owed thereon $8,012.98, with interest, the answering garnishee praying for judgment against Hirsch upon the notes, and that the clerk of the court be directed to pay the amount of the judgment from the fund on deposit in the registry of the court. The assignment attached as an exhibit to the answer was executed by the bank, accepted by Lawrence, and consented to by Hirsch.

In reply to the foregoing answer of the garnishee, Eyre filed an affidavit controverting the allegations therein contained, demanding that Lawrence be required to furnish proof of the amounts due it from Hirsch, and stating other defenses to the answer, including a demand that Lawrence be required to marshal the assets which it held as security, and proceed against the property covered by its own warehouse receipts before moving against or participating in the proceeds of insurance policies then on deposit with the clerk of the court.

Eyre also filed an affidavit controverting the allegations contained in the bank's answer to the writ of garnishment, making certain affirmative allegations in connection therewith, and also praying that the bank and Lawrence be required to marshal the assets which they held as security.

Judgment was entered July 30, 1947, in favor of Eyre against Hirsch in the sum of $13,787.04, together with interest, an attorney's fee in the sum of $1,250, and costs. The judgment provided that Eyre's rights acquired pursuant to the writs of garnishment above referred to should not be

affected by the judgment, the court retaining jurisdiction to determine the rights of the parties concerned. The judgment further provided that execution upon the judgment against Hirsch would be stayed.

The action between Eyre, as plaintiff, and the bank and Lawrence, as garnishees, as defined by the pleadings of the respective parties in connection with the writs of garnishment, was tried to the court with the result that, January 4, 1949, the court entered findings of fact and conclusions of law in favor of Eyre, followed by a judgment, dated January 4, 1949, whereby Eyre was awarded judgment against the bank for $810.97, the court also awarding to Eyre the sum of $11,100 then on deposit in the registry of the court.

From this judgment, the bank and Lawrence have prosecuted separate appeals, filing one brief on behalf of both appellants, and making the following assignment of errors:

"(1) The Trial Court erred in holding that the receipts here involved were negotiable.

"(2) The Trial Court erred in holding that the receipts here involved were symbols of the goods themselves and of the possession of said goods.

"(3) The Trial Court erred in holding that the Lawrence Warehouse Company was not entitled to a marshaling of the assets herein.

"(4) The Trial Court erred in granting judgment against the appellant bank herein.

"(5) The Trial Court erred in not granting said bank judgment for $651.66 with interest thereon from July 21, 1947 and in not providing that said bank's judgment be paid out of the $11,100.00 cash in the hands of the Clerk of the Superior Court of Walla Walla County.

"(6) The Trial Court erred in granting judgment against the Lawrence Warehouse Company.

"(7) The Trial Court erred in not granting said Lawrence Warehouse Company judgment for $9,012.98 [$8,012.98] with interest thereon from March 16, 1947 until paid at the rate of 6% per annum, interest payable semi-annually, and if not so paid to be added to and become a part of the principal and drawing like interest until paid, and that said judgment be paid out of said $11,100.00 in the hands of said Clerk."

After the parties had rested, the court heard arguments by counsel for Lawrence, for the bank, and for Eyre. The court then orally announced its opinion in favor of Eyre, whose counsel stated that he would prepare appropriate findings of fact and conclusions of law and submit them to the court. The statement of facts ends at this point.

The transcript contains findings of fact, conclusions of law, and a judgment proposed by Lawrence, but the record before us does not disclose that these were ever presented to or refused by the trial court. Appellant Lawrence does not assign error upon any refusal of the trial court to make findings which it proposed.

Both appellants are here represented by counsel who appeared before the superior court as attorney for Lawrence, and, as above stated, appellants have filed here one brief, apparently joining in their first two assignments of error, assignments Nos. 4 and 5 referring to appellant bank, while assignments Nos. 3, 6 and 7 refer to Lawrence.

By Rule of Supreme Court 16, 18 Wn. (2d) 17-a, rules governing "contents and style of briefs" are set forth at considerable length. Subdivision 5 of this rule reads in part as follows: "Each error relied on shall be clearly pointed out and discussed under appropriate designated headings."

■ Appellants have made no assignment of error upon any finding or any portion of any finding made by the trial court. They do assign as error certain "holdings" of the trial court, but such an assignment of error is insufficient to present to this court for review the making by the trial court of any particular finding or any portion thereof. The word "holding" is indefinite and may refer to a trial ruling of the court upon evidence or other questions presented during the trial.

■ Of course, no oral statement made by the court at the close of a trial, nor any written memorandum opinion filed, may be assigned as error on appeal, as the final decision in a law action is the judgment signed, based upon the court's findings of fact and conclusions of law.

The following decisions of this court establish the law of this state:

"No assignment of error having been predicated upon the findings of fact, we must accept them as the established facts in this case. Rule XXI, Rules of the Supreme Court, 193 Wash. 28-a. See *State ex rel. Linden v. Bunge,* 192 Wash. 245, 73 P. (2d) 516; *Hubbell v. Ernst,* 198 Wash. 176, 87 P. (2d) 985.

" 'An assignment of error as to a conclusion of law does not bring up for review the facts found upon which the conclusion is based.' 4 C. J. S. 1786, § 1270.

"See, also, *Edmundson v. Friedell,* 199 Ind. 582, 159 N. E. 428; *Quinn v. Gormley,* 302 Pa. 360, 153 Atl. 623." *LeCocq Motors v. Whatcom County,* 4 Wn. (2d) 601, 104 P. (2d) 475.

"The findings of the trial court are amply supported by the evidence, and appellant assigns no error upon the making of any finding. The facts found, then, must be accepted as established facts in the case. *LeCocq Motors v. Whatcom County,* 4 Wn. (2d) 601, 104 P. (2d) 475." *Brydges v. Millionair Club,* 15 Wn. (2d) 714, 132 P. (2d) 188.

"No error is assigned upon any of the trial court's findings of fact.

"We have repeatedly held that where no error is assigned upon the findings of fact, this court will accept the findings as the established facts in the case. [Citing cases.]" *State v. Moore,* 34 Wn. (2d) 351, 208 P. (2d) 1207.

See, also, 5 Bancroft's Code Pleading, Practice and Remedies (10 yr. Sup.) 4332, § 7104.

■ In accordance with the authorities above cited, we accept, as established facts, the findings entered by the trial court. This, however, does not apply to conclusions of law made by the court, whether included in the findings of fact or stated separately.

By assignment of error No. 6, *supra,* Lawrence states that the trial court "erred in granting judgment against the Lawrence Warehouse Company."

The trial court entered two judgments in this action, both in favor of respondent. The first judgment, dated July 30, 1947, granted respondent judgment against Hirsch for $13,787.04, together with interest, an at-

torney's fee, and costs, and provided that the respective rights of respondent and other parties to the action against the garnishees (and the fund in the registry of the court) should be determined later, and that execution against the "principal defendants [Hirsch]" be stayed.

January 4, 1949, the second judgment was entered, awarding respondent judgment against the bank for $810.97, and also awarding to respondent the $11,100 in the registry of the court, upon credit by respondent of that amount on respondent's judgment against Hirsch. It was from this latter order or judgment that Lawrence and the bank appealed.

While this judgment determined the issues between respondent and Lawrence contrary to the latter's contention that the fund should be awarded to it, no judgment was entered against Lawrence. The transcript contains a judgment proposed by Lawrence, which includes a paragraph granting appellant bank "a judgment for $651.66 and that the same be paid out of funds now on deposit in this cause with the Clerk of this Court." The proposed judgment also contains a provision to the effect that Lawrence "recover herein judgment for the sum of $8,012.98," with interest, and that this judgment be paid from the funds in the registry of the court. The proposed judgment does not state against whom the judgments were to be rendered, but does provide for judgments for costs against respondent Eyre.

The record before us does not disclose that either the bank or Lawrence ever sued Hirsch, the debtor. Prior to the assignment by the bank to Lawrence of the Hirsch notes in the bank's favor, it does not appear that Lawrence had any affirmative claim or right of action against Hirsch, nor does it appear that the bank had ever instituted any action against Hirsch upon the latter's notes or any other indebtedness, or that, after the assignment to Lawrence, the latter ever instituted any action against Hirsch.

By its answer to the writ of garnishment, filed July 8, 1948, Lawrence (merely a garnishee in this action) pleaded its ownership of the notes, as the bank's assignee, and prayed that the court enter a judgment in its favor for $8,012.98, with interest; that the clerk of the court be ordered

to pay "said judgment" to Lawrence, and that Lawrence recover its costs against respondent Eyre. Lawrence also prayed for equitable relief.

Appellant bank, by its answer as garnishee, merely asked that it be discharged from further liability as garnishee, and that it be allowed an attorneys' fee.

In support of the judgment of January 4, 1949, awarding the fund in the registry of the court to respondent, the court found that, July 30, 1947, judgment was entered in this action in favor of Eyre and against Hirsch, as hereinabove stated, and that this judgment had remained wholly unsatisfied.

Appellants' brief is confusing, as arguments are indiscriminately advanced on behalf of appellant Lawrence and appellant bank, and, at times, apparently on behalf of the appellants jointly.

Without further discussing the status of appellants as not being judgment creditors of Hirsch and as not being plaintiffs in any pending action against Hirsch, we shall now consider other contentions urged by appellants, who argue that the warehouse receipts in question are nonnegotiable. The receipts were issued "for the account of and to be delivered, without surrender of this Warehouse Receipt, upon written order of" the bank. They were stamped "non-negotiable," and pursuant to Rem. Rev. Stat., §§ 3590, 3591, 3593 [P.P.C. §§ 992-7, -9, -13], it appears that the warehouse receipts in question are not negotiable instruments.

As above stated, the trial court found that appellant bank sold and assigned the warehouse receipts to appellant Lawrence for less than their value, and that the warehouse receipts were worth more than the amounts due the bank from Hirsch, concluding that the bank was liable to respondent for the difference between the amount it received for the warehouse receipts from Lawrence and the reasonable market value thereof, which difference the court found to be $1,335.45. Against this amount, the court allowed appellant bank a credit, entering judgment in respondent's

favor against the bank for the difference, as above stated.

The trial court also found that appellant bank held an equitable assignment from Hirsch of the proceeds of the Sun insurance policy, represented by the fund in the registry of the court. The court held that neither appellant was entitled to any of this fund, because, upon the facts, the bank was obligated to first marshal its assets and proceed against the warehouse receipts before it could look to the proceeds of the insurance policy (which were subject to respondent's writ of garnishment). The court also ruled that, since the bank's security, in the form of warehouse receipts, had a value in excess of the indebtedness due the bank, it had no right to or interest in the proceeds of the insurance policy, and that appellant Lawrence, the bank's assignee, had no right to any portion of the fund in the registry of the court, superior to the right of its assignor, appellant bank.

Appellants argue that a warehouse receipt which is non-negotiable does not represent the goods covered thereby, while a negotiable warehouse receipt does represent the goods, citing *Brock v. Atteberry,* 153 La. 649, 96 So. 505, which was an action by the holder of a nonnegotiable warehouse receipt against the warehouseman who issued the same. The plaintiff held the receipt by transfer from the person who had originally received it from the warehouseman. Prior to notice from the plaintiff, the warehouseman had received from the depositor other goods and had issued negotiable warehouse receipts to the depositor covering all of the goods deposited, including those represented by the receipt held by the plaintiff. The court held that the plaintiff's rights must be measured by the rights of his transferor and that the warehouseman was justified in refusing to deliver to plaintiff the goods called for by his receipt without surrender of the negotiable receipts which had been issued prior to receiving notice of the assignment of the receipt upon which plaintiff relied.

In this connection, appellants also cite *Merchants and Mechanics' Bank of Chicago v. Hewitt* (1856), 3 Iowa 93,

66 Am. Dec. 49, where it appeared that the plaintiff held, by assignment, a warehouse receipt for one thousand bushels of shelled corn, to be delivered to the order of the depositor. The court held that the receipt was not negotiable, and that, in the hands of the plaintiff assignee, it was subject to any defense which the warehouseman could have urged against the person to whom the receipt was originally given.

In the two cases above cited, the warehousemen were allowed to urge against the assignees of the warehouse receipts defenses which they could have urged against the original depositors of the goods. Neither case supports appellants' argument to the effect that a nonnegotiable warehouse receipt does not represent the goods covered thereby.

Appellants then argue that the service of the writs of garnishment upon them "did not levy on the grain," and that a

" . . . sale of the receipts themselves would not alone transfer title to the grain. Hence serving a Writ of Garnishment on the Bank did not tie up any grain mentioned in these receipts—especially when said grain was then nonexistent."

In the case at bar, the warehouse receipts were issued directly to appellant bank, which never assigned or transferred the receipts until the transfer to appellant Lawrence, the warehouseman who issued them, as above set forth. Had the bank sued Lawrence upon the receipts, it would seem that the latter would have been liable thereon. It appears that Lawrence definitely admitted its responsibility to the bank, its representative stating that Lawrence stood "one hundred per cent back of their warehouse receipts."

Lawrence contends that the warehouse receipts were simply acknowledgments that it held the amount of grain referred to therein, to be delivered upon written order of the bank, without surrender of the receipts, and that, consequently, the receipt itself is not "the thing," by which we assume that Lawrence means the grain covered by the receipt, as otherwise the receipt would have to be returned upon delivery of the goods covered thereby.

This argument may be answered with the statement that, under the receipts, Lawrence was accountable to the bank for the amount of grain that the receipts called for. What defenses, if any, Lawrence might have urged in an action upon the receipts need not be here considered, as no such question is presented. Lawrence forestalled any action on its warehouse receipts by anyone by purchasing the receipts from the bank.

In support of their contention that a *nonnegotiable* warehouse receipt may be transferred but not negotiated, and that, generally, such a transfer or assignment does not cut off prior equities, appellants cite Rem. Rev. Stat., § 3625 [P.P.C. § 992-105]. The proposition stated appears to be correct.

Attention is again called to the fact that the fund in the registry of the court, which the judgment herein directed be turned over to respondent, represents the proceeds of insurance on Hirsch's mill and the grain therein, not on the grain stored in Lawrence's warehouse and represented by the warehouse receipts. This fund came into existence as the result of the suit by Hirsch against Sun, *supra,* based upon the insurance policy written by Sun covering the Hirsch mill and its contents.

 Appellants argue that a warehouse receipt is not a "symbol" of the goods covered thereby, citing 2 Williston on Sales (Rev. ed.) 555, 618, §§ 413, 428.

There is some conflict of authority as to whether a warehouse receipt is or is not a "symbol" of the goods.

In Jones on Collateral Securities (3d ed.) 332, § 280, appears the following text:

"Warehouse receipts by custom have long been considered as representing the property mentioned in them; and the assignment or indorsement of such instruments has long been regarded as equivalent to the delivery of such property. . . . The delivery of the symbol of the property was as effectual as an actual delivery of the property itself."

In 27 R. C. L. 968, Warehouses, § 24, it is said:

"Though a warehouse receipt, in the absence of statute, was not generally negotiable so that the transferee would

procure a better title than the transferor had, it was well settled that the transfer of the receipt would have the effect of passing whatever title the transferor had. The law dispensed with a manual delivery of the property when it was in a warehouse, and substituted a symbolical delivery by the use of the receipt. Indeed, it was said that when the warehouseman became the bailee of the transferee of the receipt, there had been an actual, not merely a symbolic, delivery of the property. Thus, a pledge or a sale of property represented by a warehouse receipt could be made by a delivery of the receipt accompanied with an intention to make a transfer. The warehouseman then became a bailee for the transferee of the instrument, and the possession of the receipt was presumptive evidence of title to the stored goods."

In 56 Am. Jur. 335, Warehouses, § 29, the rule is stated as follows:

"A warehouse receipt is, however, also regarded in ordinary commercial transactions as a symbolical representation of the property itself, and this effect is frequently created or recognized by statute. Indeed, the Uniform Sales Act specifically provides that unless the context or subject matter otherwise requires, the phrase 'document of title to goods,' as used therein, includes a warehouse receipt. That Act has also been held to require that the mercantile view of a warehouse receipt as a document of title shall have recognition to the exclusion of any inconsistent doctrine which may have previously obtained in any of the states enacting it."

In our opinion, the rule stated by the three texts last cited is that approved by the majority of courts and text writers.

It would seem that appellant Lawrence's contention that a warehouse receipt is not a symbol of the goods receipted for could only be applicable in certain cases where exceptions to the general rule should be recognized.

Appellants apparently contend that service of the writ of garnishment amounted only to garnishment of the warehouse receipts and not of the grain covered thereby.

The trial court held that the warehouse receipts were subject to the writ of garnishment issued by respondent, and

that appellant bank sold the receipts for less than their value.

■ One who has accepted, as a pledge, the possession of the property of another, and is served with a writ of garnishment in an action by a third party against the pledgor, is obligated, pursuant to the writ, to answer the same by fully describing the property in the garnishee's possession belonging to the defendant in the action in which the writ of garnishment was issued.

Rem. Rev. Stat., § 5836-76 [P.P.C. § 855-1] (the section of the uniform sales act stating definitions) contains the following:

"(1) In this act, unless the context or subject matter otherwise requires: . . .

" 'Document of title to goods' includes any . . . warehouse receipt or order for the delivery of goods, . . ."

A writ of garnishment may issue in an action upon the filing by the plaintiff of an affidavit stating that the person to whom the writ is to be directed ". . . is indebted to the defendant, or that he has in his possession, or under his control, personal property or effects belonging to the defendant, . . ." Rem. Rev. Stat., § 682 [P.P.C. § 57-5].

In the case at bar, appellant bank had in its possession, as security for the debt due the bank from Hirsch, property belonging to Hirsch, subject to the pledge to the bank, for which property the latter would be liable to account to Hirsch, and to respondent, as garnisher. The bank filed an appropriate answer to the writ of garnishment.

By their fifth assignment of error, appellants contend that the trial court erred in not granting the bank judgment for $651.66, and in not providing that such judgment be paid out of the fund in the registry of the court. By its answer as garnishee, the bank asked for no judgment against anyone, save for an attorney's fee. In their brief, appellants do not state against whom any judgment in favor of the bank should have been entered. As above stated, the court allowed the bank a credit of $651.66 upon the judgment in respondent's favor against the bank.

Examination of the record convinces us that the trial court's finding that, after the service of the writ of garnishment, appellant bank sold the warehouse receipts issued to it as security for the amounts owed the bank by Hirsch for less than the value of the receipts, is supported by the evidence introduced at the trial, and that the court correctly concluded that respondent was entitled to judgment against the bank for the amount Hirsch had on deposit therein ($127.18), together with the sum of $1,335.45 (the difference between the value of the warehouse receipts and the amount for which the bank sold them), less the credit allowed the bank of $651.66, making a total judgment against the bank in the sum of $810.97.

The liability of the bank to respondent is supported by the following authorities: 38 C. J. S. 406, § 182; *Eidemiller v. Elder,* 32 Wash. 605, 73 Pac. 687; *Maury v. Toledo Logging Co.,* 163 Wash. 563, 1 P. (2d) 896, and *Kyte v. MacIvor,* 266 Mich. 258, 253 N. W. 289.

Appellants contend that Hirsch, with the assistance of one Henley (who was Lawrence's warehouseman, in charge of the warehouse in which the Hirsch grain was deposited, and who, apparently, was also employed by Hirsch in some capacity), permitted a shortage to occur in the grain represented by the warehouse receipts, and that Hirsch had admitted that any such shortage had been caused by the removal of grain from the warehouse to the mill, Lawrence arguing that, "When Henley acted in this manner he ceased to be the agent of the warehouse company and became the sole agent of Hirsch. No man can serve two masters."

These matters, and others argued, apparently, on behalf of Lawrence, appear to be immaterial.

We shall now consider appellants' assignment of error No. 3, by which Lawrence contends that the trial court erred in refusing to hold that Lawrence was entitled to marshal the assets in its possession and to require respondent to proceed against the warehouse receipts instead of the fund in the registry of the court.

Apparently, Lawrence now contends (after assuring appellant bank that it stood behind its warehouse receipts "one hundred per cent") that it has a defense to any claim on the part of Hirsch or anyone else against the grain represented by the warehouse receipts or its value, by reason of the fact that the full amount of that grain was not in the warehouse at the time of the trial of this action and that Hirsch was responsible for surreptitiously removing a portion of that grain.

The only evidence in the record connecting Hirsch with any shortage of grain represented by the warehouse receipts issued by Lawrence, is found in the testimony of Cameron Sherwood, Esquire, an attorney at law, who had represented Hirsch in the action brought by the latter against Sun. Mr. Sherwood was called as a witness by respondent, and testified briefly concerning matters relevant to the case of Hirsch v. Sun. On cross-examination by counsel for appellant Lawrence, the witness testified as follows:

"Q. About the shortage in the warehouse, what about that? A. Mr. Hirsch testified at the trial,—if there was a shortage in the Loundagin Barn? Q. Yes. A. It was moved into the warehouse that burned. Q. In the warehouse that burned? A. Yes, that was what he said at the trial. It was moved in before the fire. Q. And that is the mill? A. Yes, sir."

The testimony quoted was merely hearsay, and does not necessarily indicate that any grain was removed from the warehouse surreptitiously or without the knowledge of appellant Lawrence.

In the case at bar, the writ of garnishment sued out by respondent was apparently served upon appellant bank June 17, 1946, the answer having been verified July 2, 1946. Evidently, no supposed shortage of grain was reported to Lawrence by its warehouse examiner until July 9, 1946. January 27, 1947, appellant Lawrence issued the new warehouse receipt to appellant bank, acknowledging possession of the full amount of grain shown on the five prior receipts. During the year 1947, appellant Lawrence charged the bank for insurance and storage on the full amount of the grain.

In the case of *Johnson v. Wilson*, 145 Wash. 515, 261 Pac. 102, this court said:

"The burden of showing conditions calling for marshaling securities is upon him who seeks the benefit thereof. In the text of 18 R. C. L. 462, it is well stated that,

" 'The creditor who asserts the equity to marshal securities must show that the right of his co-creditor will neither be endangered nor injuriously delayed.' "

Other authorities were also cited in support of the above statement.

Appellant Lawrence was not a creditor of Hirsch until it purchased the latter's notes from the bank and voluntarily assumed that status. Prior to that time, all that can be said is that Lawrence had a possible defense to an action by Hirsch for the recovery of the grain represented by the warehouse receipts.

In order to obtain an order or judgment of a court directing the marshaling of assets upon the request of one of several creditors of the same debtor, it should appear that other creditors would not be harmed by the process. The granting or refusal of a marshaling of assets rests largely in the discretion of the trial court exercising equitable jurisdiction.

Based upon the record before us, the trial court correctly ruled that appellant Lawrence was not entitled to the order which it requested, directing a marshaling of assets in its favor.

In entering the judgment appealed from, the trial court did not err.

The judgment entered against appellant bank is affirmed, and that portion of the judgment awarding respondent the fund in the registry of the court is also affirmed.

SIMPSON, C. J., SCHWELLENBACH, GRADY, and DONWORTH, JJ., concur.